**MUNICIPALITY OF ANCHORAGE, and Barbara Gruenstein, Municipal Clerk, Appellants,**

v.

**Peter O. MJOS, M.D., Appellee.**

No. S–13039.

Supreme Court of Alaska.

March 27, 2008.

---

**942**

Robert P. Owens, Assistant Municipal Attorney, Pamela Weiss, Assistant Municipal Attorney, and James N. Reeves, Municipal Attorney, Anchorage, for Appellants.

Bruce A. Bookman, Bookman & Helm, LLP, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

**PER CURIAM.**

Dick Traini, a member of the Anchorage Assembly, declared his candidacy for reelection on January 25, 2008. Dr. Peter Mjos filed an action against the Municipality of Anchorage and the Municipal Clerk for injunctive relief and declaratory judgment that Traini was ineligible to run for reelection under the three-consecutive-term limitation found in Anchorage Municipal Charter 4.02(e). The superior court held that Traini was ineligible to run for reelection under subsection 4.02(e) based on its finding that a "partial term" counted as a term for the purposes of the section's three-term limit. The Municipality appealed. This court granted expedited consideration and heard oral argument on March 27, 2008. We reverse for the following reasons.

## FACTS AND PROCEEDINGS

On April 16, 2001, Dick Traini was elected to the Anchorage Assembly in a special midterm election. He served for a full year before being reelected for his first full three-year term on April 2, 2002. Traini was then reelected again on April 18, 2005 for another three-year term.

Because Traini was considering running for another term, Barbara Gruenstein, the Anchorage Municipal Clerk, requested that an attorney give an opinion on the proper interpretation of the assembly term limits described in Anchorage Municipal Charter 4.02(e). This term limit provision was added to the Municipal Charter by popular vote in 1990. Municipal Charter 4.02 provides in part that:

Section 4.02. Term, membership and qualifications.

(a) If all assemblymen are elected from single member districts, the term of an assemblyman is two years. If some or all assemblymen are elected from multi-member districts, the term of an assemblyman is three years.

. . . .

(e) A person who has served on the assembly for three consecutive terms may not be reelected to the assembly until one full term has intervened.

By letter dated January 7, 2008, the attorney gave his opinion that serving on the Assembly for less than three years did not count as a "term" toward the three-term limit.

On January 25, 2008, Traini declared his candidacy for reelection to the Assembly. After Traini's declaration, Gruenstein informed Traini that he was qualified to seek reelection to the Anchorage Assembly for an additional term of three years and that his name would appear on the ballot at the municipal election to be held on April 1, 2008.

On February 28, 2008, Dr. Peter O. Mjos filed suit in the superior court and sought a preliminary injunction pursuant to Alaska Civil Rule 65(a) to require the municipal clerk to remove Traini's name from the April 1, 2008 ballot. Mjos also moved for declaratory judgment that Traini could not be elected to the Assembly, regardless of whether his name remained on the ballot. Mjos based his motion on the assertion that Traini's initial election to the Anchorage Assembly for one year counted toward the three-term limit imposed by Municipal Charter 4.02(e), and thus Traini was not eligible to be reelected to the Anchorage Assembly until one full term had intervened. The Municipality of Anchorage and Gruenstein (collectively "Municipality") responded by filing a cross-motion for declaratory judgment that Municipal Charter 4.02(e) limits assembly members to three consecutive full terms.

Briefing on the subject was completed and oral argument was heard before the superior court on March 17, 2008. The superior court issued its final judgment from the bench and in a written order that same day. The superior court found that the word "terms" as used in Municipal Charter 4.02(e) includes a partial term, and therefore held that Traini was not eligible for reelection.

The Municipality appeals.

## DISCUSSION

 In our view there is a presumption in favor of candidate eligibility. In cases where there is a statutory ambiguity as to whether or not a candidate is eligible to run for office, the statute should be construed in favor of eligibility, so long as it may be reasonably so read.[1] In light of this presumption, the question here is whether the phrase "three consecutive terms," as used in subsection 4.02(e) can reasonably be interpreted to refer only to full terms. We believe that this question is close and that the interpretation adopted by the superior court—that "terms" in subsection 4.02(e) refers to both full and partial terms—is logical and more consistent with established principles of statutory interpretation. Nonetheless, we conclude that interpreting the language in question to refer only to full terms is reasonably possible.

The argument in favor of the superior court's interpretation focuses on the use of the word "full" in the phrase "until one full term has intervened." Use of the modifier "full" here implies that the unmodified word "terms" as first used in subsection 4.02(e) encompasses partial as well as full terms. If the drafters of the provision thought that use of the word "term" or "terms" meant only full terms, the modifier "full" would be unnecessary surplusage.

Use of the modifier "full" in the second usage of "term" in subsection 4.02(e) therefore suggests that because the modifier is not

---

1. Statutes dealing with the right of voters to choose public officials and the right of citizens to aspire to and hold public office, should receive a liberal construction in favor of assuring the right to exercise freedom of choice in selecting public officials and also the right to aspire to and hold public office.

63C Am.Jur 2d *Public Officers and Employees* § 53 (1997) (citing *Cannon v. Gardner,* 611 P.2d 1207, 1211 (Utah 1980)). We have likewise expressed a preference in favor of eligibility for elective office. *O'Callaghan v. State,* 826 P.2d 1132, 1137 (Alaska 1992); *Warwick v. State ex rel. Chance,* 548 P.2d 384, 389 (Alaska 1976).

employed in the first usage, "terms" there may be either full or partial terms. But this does not necessarily mean that the unmodified word "terms" in its first usage in subsection 4.02(e) cannot reasonably be read to refer only to full terms. Subsection 4.02(a) states that "the term of an assemblyman is three years." "Term" here clearly refers to a full term, even though the word "full" is not included. It is possible that a drafter focusing on subsection 4.02(a) might think that "term" or "terms" wherever used later would necessarily refer to full terms and that the use of the modifier "full" was not necessary. Under this interpretation, use of the modifier "full" to describe the necessary interval that must pass before a three-term Assembly member could run again might be explained as merely an exercise in caution rather than an intended signal that the earlier usage of the word "terms" was meant to include partial terms.

The principle disfavoring an interpretation of a statute that fails to give meaning to a word or section is a guideline only. In *Homer Electric Ass'n v. Towsley*,[2] we observed, after acknowledging this principle, that it does not apply in all circumstances. We noted that "[r]edundancy in legislative drafting, as in other writing, is not uncommon."[3] Here we think that it is reasonably possible in light of the plain meaning of the word "term" used in subsection 4.02(a) that a draftsman intended "terms" used in the first part of subsection 4.02(e) to have the same meaning as in subsection 4.02(a) notwithstanding the contrary implication that arises from modifying "term" in the second usage in subsection 4.02(e) with the word "full."

Since we conclude that both parties' interpretations of subsection 4.02(e) are reasonably possible, we apply the presumption in favor of candidate eligibility referred to above. Accordingly, the judgment of the superior court is REVERSED, and this case is REMANDED to the superior court for entry of judgment in favor of the appellants.

---

2. 841 P.2d 1042, 1045 (Alaska 1992).

